UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI) | MDL DOCKET NO. MDL 875 |
| THIS DOCUMENT RELATES TO: Cases listed on attached Exhibit "A" | |

**PLAINTIFFS' MOTION AND MEMORANDUM TO MODIFY THE COURT'S JANUARY 3, 2012 ORDER DISMISSING VARIOUS CASES WITH PREJUDICE**

Plaintiffs on the attached Exhibit A, through counsel, hereby move this Court to modify the January 3, 2012 Order ("the Order") dismissing the claims of eighteen (18) plaintiffs[1][2] with prejudice due to inadequate exposure histories. However, in the Order the Court did not specify whether the dismissals were with or without prejudice. Under Federal Rule of Civil Procedure 41(b), absent an express qualification that dismissal is without prejudice, a dismissal is treated as an adjudication on the merits. Specifically, plaintiffs request that an amended order be entered to dismiss the instant cases *without* prejudice.

---

[1] Plaintiff Richard Subert's case was also included in the Order. However, pursuant to email exchanges between CVLO personnel and the Court's personnel, the Order as it pertains to Mr. Subert's case will be vacated as it was made in error.

[2] Plaintiff Kathleen Stafford's, individually and as Special Administrator of the Estate of James J. Wilhlem, case was also included in the Order. However, Ms. Stafford's motion to modify is separately filed.

## FACTS AS TO PLAINTIFFS

As to each plaintiff, Exhibits B1 to B16 respectively include: (1) a brief summary of facts as to such plaintiff; (2) the plaintiff's AO 12 submission; (3) interrogatory responses or other documents reflecting such plaintiff's exposure history; and (4) medical documents recently obtained confirming the plaintiff's medical condition.

## ARGUMENT

I. **THE COURT SHOULD PERMIT PLAINTIFFS TO FILE AMENDED REPORTS, OR AT MOST MODIFY THE JANUARY 3, 2012 ORDER TO DISMISS THE CASES *WITHOUT* PREJUDICE.**

Dismissal with prejudice for alleged failure to comply with a court order is an extraordinary remedy that must be based on considerations such as plaintiff's personal culpability, dilatory and contumacious conduct, and prejudice to defendants. "[D]ismissal with prejudice is only appropriate in limited circumstances and doubts should be resolved in favor of reaching a decision on the merits." *See Emerson v. Thiel College,* 296 F.3d 184, 190 (3rd Cir. 2002).

In determining whether to dismiss with or without prejudice under Rule 41(b), the Third Circuit has identified six relevant factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Poulis v. State Farm Fire & Cas. Co.,* 747 F.2d 863, 868 (3d Cir. 1984).

There is no personal responsibility on the part of the plaintiffs. Their AO12 disclosures

were timely filed, and substantial information has also been timely provided in the form of interrogatory answers and medical records. Defendants will not be prejudiced if plaintiffs are allowed to re-submit their AO12 disclosures or refile their lawsuits. The alleged failure to include detailed exposure history was not willful or in bad faith. A requirement that plaintiffs amend their AO12 disclosures would be a sufficient and effective sanction, because plaintiffs and their counsel would be required to expend both time and money to obtain a new diagnostic report. Finally, all of these plaintiffs have meritorious claims in that they have all been diagnosed with malignant or symptomatic asbestos-related illnesses.

Dismissal with prejudice would also be unjust because AO12 was not intended to require plaintiffs to update medical reports that were the basis for filing suit. Throughout these MDL proceedings, plaintiffs have been assured that they would have ample opportunity to update their medical reports. Ultimately, any expert medical opinions will be subject to Daubert challenges. Defendants have made it clear that their concern was fraudulent mass screenings, which is not the case here. Defendants complained that it was unfair that they be required to defend nonmalignant asymptomatic cases without the ability to assess and challenge the basis for the asserted diagnosis. Plaintiffs made clear that they should not be subjected to requirements to repeatedly update reports based on new standards. AO12 was entered to provide a mechanism to demonstrate the basis for the asserted diagnosis to permit Defendants to identify groups of plaintiffs that were subject to purported mass screenings so that evidentiary challenges could be made in those cases, and so that settlement efforts could focus on more serious cases.

To the extent the Court is now construing AO12 to contain an implicit requirement that reports with detailed exposure histories in malignant cases, it would be unfair to dismiss cases

with prejudice based on a requirement that was not expressly set forth.

## II. ADMINISTRATIVE ORDER 12 DOES NOT SUPPORT DISMISSING CANCER CASES BASED ON "INADEQUATE EXPOSURE HISTORY."

Ten of the plaintiffs at issue–Gisela Meischner, Joseph Wright, Darrell Hulmes, Theodore Brownlee, Monte Dual, Kenneth Nelms, David Gehrke, Bob Gaddy, Clyde Nall, and Roman Anuszkiewicz–have been diagnosed with some form of cancer. The Court's January 3, 2012 Order should be modified as to these ten plaintiffs because they have been diagnosed with some form of cancer. Because these plaintiffs have developed malignant or symptomatic conditions that are documented by their treating physician records, their cases are not subject to the "mass screening" provisions of AO12 section 7. Moreover, the malignant, non-screened cases are not subject to the diagnostic guidelines of the American Thoracic Society and Association of Occupational and Employment Clinics which by their terms apply only to "non-malignant" (ATS) and "screening" cases.

Under the Helsinki Report, which is generally regarded as the authoritative guideline for diagnosing asbestos-related cancers, the mere presence of underlying asbestosis or bi-lateral pleural thickening can itself be evidence that the exposure history was sufficient for attribution purposes:

> The presence of asbestosis is an indicator of high exposure....Bilateral diffuse pleural thickening is often associated with moderate or heavy exposures, as seen in cases with asbestosis, and should be considered accordingly in terms of attribution. A minimum lag-time of 10 years from the first asbestos exposure is required to attribute the lung cancer to asbestos.

A. Tossavainen, "Asbestos, asbestosis, and cancer: the Helsinki criteria for diagnosis and

attribution," 23(4) *Scand. J. Work, Envir't. & Health* 311 at 314 (1997) (Exh. C).

AO12 section 7 simply does not apply to the ten above mentioned cases. The purpose of section 7 is to permit defendants to mount *Daubert* challenges to ***non***-malignant cases based on mass screening. AO12 section 7 on "Screened Cases" expressly refers to motions to address evidentiary sufficiency "in ***non***-malignant cases supported ***only*** by the results of mass screenings which allegedly fail to comport with acceptable screening standards." (Emphasis added.) That rationale applies to asymptomatic nonmalignant cases where the only evidence of disease is a B-read. In that context, the unreliability of mass screenings was deemed to create a risk that cases will be litigated based on no reliable evidence that an asbestos-related condition arises, and AO12 thus was intended to provide a gatekeeper function to reduce litigation costs where the only basis for a colorable nonmalignant claim is an unreliable mass screening report.

Screening considerations do not apply in the context of a symptomatic or malignant cancer case. Simply put, these cases are not "supported only by the results of mass screenings." Symptoms of asbestosis and even more so the development of cancerous cells are objective indicia of disease that go beyond, and corroborate, a B-read, and provide independent corroboration of the underlying asbestos-related condition.

### III. ADMINISTRATIVE ORDER 12 DOES NOT SUPPORT DISMISSAL OF MALIGNANT OR SYMPTOMATIC CASES WHERE THE DIAGNOSIS WAS MADE OR CONFIRMED BY TREATING DOCTORS.

In their initial challenges to "mass litigation screenings" that led to the entry of AO12, defendants argued that the only legitimate cases that should be permitted to proceed are cases in which a ***treating physician*** had diagnosed an asbestos-related condition.

5

For many of the plaintiffs at issue here, the treating medical records corroborate the asbestos-related conditions. In these cases, the X-rays reviewed by plaintiffs' experts were taken at hospitals. In many of the cases, the X-rays were taken as part of the regular treatment of the plaintiffs by their treating physicians. In these cases the treating medical records corroborate the existence of the underlying condition and/or that it is asbestos-related. In some cases, the medical records also confirm the plaintiffs' exposure histories. As to these plaintiffs, defendants' motion should be denied.

## IV. THE EXPOSURE HISTORIES IN THESE PLAINTIFFS' DIAGNOSIS LETTERS ARE ADEQUATE, GIVEN THE LATENCY AND LONGEVITY.

All that Fed. R. Evid. 705 and Fed. R. Civ. P. 56 require is a statement of the expert's opinion and a general statement of the factual basis and methodology. "Expert opinion is admissible and may defeat summary judgment if it appears that the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit, even though the underlying factual details and reasoning upon which the opinion is based are not." *Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1318 (9th Cir. 1985). The reports here provide that, and they are sufficient to withstand a summary judgment motion. The admissibility of the expert opinions can and should more properly be challenged through a *Daubert* motion, as the scheduling orders contemplate.

Neither the Rules, nor AO 12, nor the ATS guidelines require a diagnosing physician to spell out every single fact on which a diagnosis is based. For example, in these cases Dr. Ibrahim Sadek has testified that her personally spoke with the patients he examined, and confirmed their exposure history. In his deposition, Dr. Sadek stated that met with the plaintiffs, spoke with them,

6

"I would take a history from them, talk to them about medical history, exposure history...Relevant history." (Sadek 27 Oct. 2011 Dep. at 31, Exh. D.) Dr. Sadek testified that he was provided with exposure history information and would reconfirm that information when he examined the patient. (*Id.* at 53.)

Regardless of whether the exposure history is supplied by the patient during an interview by the doctor, or by counsel, the doctor's recitation of that information is hearsay and probably not admissible for the truth of the matter asserted. The plaintiff's actual exposure to asbestos would most likely need to be proved at trial by fact witness testimony, possibly combined with industrial hygiene testimony. (*See* Exh. E and F.)

AO 12 section 7 simply recognizes that diagnoses in accordance with the 2004 ATS guidelines (Exh. G) have "a larger probability of adequacy for the reliability foundation necessary for admissibility" than those that do not accord with the standards.

The ATS guidelines do not create an iron-clad standard for what a diagnostic report must contain. First, the guidelines address the diagnostic process, not the contents of expert causation letters. Second, the guidelines are just that, guidelines, not standards: "These guidelines are designed for clinical application, **not for ... screening, litigation or adjudication**." 170 Am. J. Resp. & Critical Care Med. 691, 692 (2004) (emphasis added) (Exh. H). It would be grave error for the Court to apply the ATS guidelines as if they were the gatekeeper for litigation when the guidelines themselves explicitly disclaim any such role.

According to ATS, the requirement of a detailed exposure history is an "ideal" to be pursued "whenever possible." *Id.* at 695. The guidelines note that patient recollections of

exposure are fallible, and that "the characteristic radiographic signs of asbestos exposure may be enough to document exposure." In other words, the tell-tale signs of asbestos exposure on an X-ray may be sufficient to establish exposure history, even if the patient cannot recall any exposure.

While ATS counsels that "occupational title is not enough, as the names of many occupations and trades are uninformative," the guidelines go on to state that in some cases job title plus latency **is** enough: "Representative occupational exposures include, but are not limited to, manufacture of asbestos products, asbestos mining and milling, construction trades, (including insulators, sheet metal workers, electricians, plumbers, pipefitters, and carpenters), power plant workers, boilermakers, and shipyard workers." *Id.* Most of the plaintiffs in this group fell into these "representative occupational exposures," and had sufficiently long exposures in the pre-OSHA period to warrant a diagnosis of exposure.

The diagnoses in these cases generally were made before the 2004 ATS guidelines. The three primary diagnosing doctors whose reports are at issue did not engage in the kind of improper practices that were the basis of the screening concerns in the silicosis cases or that led to entry of AO 12. These doctors did not operate mobile X-ray vans in parking lots, nor did they give out rubber stamp signatures. Instead, the patients were pre-screened for asbestos exposure. Most of the plaintiffs are union members in professions with a high level of asbestos exposure, such as the occupations later specified in the ATS guidelines. These plaintiffs had decades of work in high asbestos environments, pre-dating OSHA's regulation of workplace asbestos in 1972. The plaintiffs generally were already over 50 by the time of their B-reads. In most cases hands-on physical examinations and pulmonary function tests were performed as well.

8

This is a far cry from the silica litigation screening practices criticized by Judge Jack. *In re Silica Prod. Liab. Litig.*, 398 F. Supp. 2d 563 (D. Miss. 2005). The silica screening practices included a doctor Martindale who averaged 75 diagnoses per day for over a year, whose B-read report forms were filled in by counsel beforehand, and who allowed his signature to be stamped on reports he disagreed with. *Id.* at 582-85. Another doctor, Dr. Levy, performed over 1,200 physical examinations in a 72-hour period. *Id.* at 613. Two other silica doctors, Hilbun and Cooper, did not actually look at the X-rays cited in the reports they issued and had an assistant stamp their names on reports. *Id.* at 587-90. X-rays were performed in mobile vans on city streets. *Id.* at 596. One doctor, Harron, signed B-read forms in blank and gave them to plaintiff law firms, or had his staff dictate the reports and sign his name without his ever seeing the reports. *Id.* at 600, 605.

Defendants wish to tar all diagnosing doctors with the same "screening" brush. In contrast, Judge Jack acknowledged that "screenings can be helpful," including when trade unions for workers with high asbestos exposure work with lawyers to provide medical screening for union members – which is exactly the means by which most of these plaintiffs received their diagnoses. 398 F. Supp. 2d at 627 n. 107.

For all these reasons, the AO 12 submissions contain sufficient exposure history to support the diagnosis of asbestos-related disease, and the Court's January 3, 2012 Order should be modified.

## CONCLUSION

For reasons stated above, plaintiffs respectfully request that: (1) plaintiffs' cases be reinstated and plaintiffs be granted leave to amend their AO12 disclosures; and/or (2) the Court's January 3, 2012 Order dismissing these cases with prejudice be modified to dismiss these cases without prejudice.

Dated: January 17, 2012

/S/ Michael P. Cascino, Esq.
Allen D. Vaughan
Michael P. Cascino
Robert G. McCoy
Attorneys for Plaintiffs
CASCINO VAUGHAN LAW OFFICES, LTD.
220 S. Ashland Avenue
Chicago, IL 60607
(312) 944 - 0600